UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

ALEXANDER P.,[1]

                                  Plaintiff,                Case # 24-CV-145-FPG

v.                                                                     DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,

                                  Defendant.

**INTRODUCTION**

Plaintiff Alexander P. brings this action pursuant to the Social Security Act seeking review of the final decision of the Commissioner of Social Security that denied his application for Supplemental Security Income ("SSI") under Title XVI of the Act. ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c)(3).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 10, 12. For the reasons that follow, Plaintiff's Motion for Judgment on the Pleadings is DENIED, the Commissioner's Motion for Judgment on the Pleadings is GRANTED, and the complaint is DISMISSED WITH PREJUDICE.

**BACKGROUND**

In May 2018, Plaintiff applied for SSI with the Social Security Administration ("the SSA"). Tr.[2] 115-16. He alleged disability since January 2016 due to anemia, chronic asthma, convulsions, and chronic fatigue syndrome, among other things. Tr. 116. The SSA denied his application, but he obtained another round of review after a successful appeal to the district court. In October

---

[1] Under this District's Standing Order, any non-government party must be referenced solely by first name and last initial.

[2] "Tr." refers to the administrative record in this matter. ECF Nos. 5-9.

1

2023, Administrative Law Judge Christina A. Cooke ("the ALJ") issued a decision finding that Plaintiff is not disabled. Tr. 615-30. This action seeks review of the Commissioner's final decision. ECF No. 1.

## LEGAL STANDARD

### I.    District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation marks omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation marks omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation marks omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).

### II.    Disability Determination

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986). At Step One, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 416.920(b). If so, the claimant is not disabled. If not, the ALJ proceeds to Step Two and determines whether the claimant has an impairment, or combination

of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id.* § 416.920(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to Step Three.

At Step Three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id.* § 416.920(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, *id.* § 416.909, the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See id.* § 416.920(e)-(f).

The ALJ then proceeds to Step Four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. *Id.* § 416.920(f). If the claimant can perform such requirements, then he or she is not disabled. *Id.* If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id.* § 416.920(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 416.960(c).

**DISCUSSION**

I. **The ALJ's Decision**

The ALJ analyzed Plaintiff's claim for benefits under the process described above. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since May 2018, the application date. Tr. 618. At step two, the ALJ found that Plaintiff had severe impairments of migraine headaches; obstructive sleep apnea; arthralgia of the shoulder; medial meniscus tear of the left knee; asthma; depressive disorder; anxiety disorder; and panic disorder. *Id.* At step three, the ALJ found that this impairment did not meet or medically equal any Listings impairment. Tr. 619.

Next, the ALJ determined that Plaintiff had the RFC to perform light work with additional restrictions. Tr. 621-22. At step four, the ALJ found that Plaintiff had no past relevant work. Tr. 628. At step five, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff could perform. Tr. 628-30. Accordingly, the ALJ found that Plaintiff is not disabled. Tr. 630.

II. **Analysis**

On two grounds, Plaintiff argues that remand is warranted. The Court addresses each argument in turn.

   a. **Highly Specific RFC**

Plaintiff contends that the ALJ "erred by crafting a highly specific RFC using her own surmise." ECF No. 10-1 at 16. Specifically, the ALJ found that Plaintiff (1) could "concentrate/persist for 2 hours at a time before requiring a break"; (2) could sit, stand, and walk for six hours each workday; (3) would miss work "in the range of 10 days per year but not consecutive days or in consecutive months"; and (4) would be "off task a maximum of 10% of the

4

workday." Tr. 622. Plaintiff asserts that none of these restrictions is supported by a medical opinion or evidence, and the ALJ failed to explain the basis for these limitations. *See* ECF No. 10-1 at 18-20.

Specific limitations included in an RFC, like the RFC as a whole, "must be based on evidence in the record, not on an ALJ's own surmise." *Wouters v. Comm'r of Soc. Sec.*, No. 19-CV-610, 2020 WL 2213896, at *2 (W.D.N.Y. May 7, 2020). Thus, where an ALJ includes a highly specific durational limitation, he must have an evidentiary basis for the chosen duration. A medical opinion, a claimant's testimony, or information contained in the medical records can oftentimes be sufficient to support a given duration. Furthermore, an ALJ is not limited to adopting only those durational limitations explicitly identified in the record: he is free to partially credit, or otherwise make reasonable inferences from, the evidence to determine a claimant's functional capacities and limitations. *Heckman v. Comm'r of Soc. Sec.*, No. 18-CV-6032, 2019 WL 1492868, at *4 (W.D.N.Y. Apr. 4, 2019) ("[W]hen the record contains at least some evidence of a specific limitation, the ALJ may appropriately reach a specific RFC incorporating that limitation."); *see, e.g.*, *Johnson v. Colvin*, 669 F. App'x 44, 47 (2d Cir. 2016) (summary order) (evidence supported the ALJ's finding that claimant could perform light work at "no more than 10% slower than average [pace]," notwithstanding that no evidence identified a "particular percentage range"); *Barone v. Comm'r of Soc. Sec.*, No. 19-CV-482, 2020 WL 3989350, at *5 (W.D.N.Y. July 15, 2020) (collecting cases); *cf. Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (summary order) (noting that an ALJ's conclusions need not "perfectly correspond with any of the [medical] opinions"). Unless "a reasonable factfinder would *have to conclude otherwise*," the district court must defer to the ALJ's factfinding. *Bonet v. Colvin*, 523 F. App'x 58, 59 (2d Cir. 2013) (summary order).

Conversely, however, the Court's deferential review does not give an ALJ the license to arbitrarily craft functional limitations, *Mariani v. Colvin*, 567 F. App'x 8, 10 (2d Cir. 2014) (summary order) (where some evidence showed "total loss of function" to claimant's hand and other evidence showed no loss, the ALJ could not split the difference and conclude that claimant had "fifty percent capacity"), translate raw medical data into functional terms, *McKee v. Comm'r of Soc. Sec.*, No. 18-CV-1013, 2020 WL 1283884, at *4 (W.D.N.Y. May 18, 2020), or unreasonably draw highly specific inferences from the nonspecific evidence. *See, e.g.*, *Cosnyka v. Colvin*, 576 F. App'x 43, 46 (2d Cir. 2014) (summary order) (ALJ erroneously inferred from examiner's report—which stated that claimant would require "regular comfort breaks"—that claimant would need to "take a six-minute break every hour"). Moreover, an ALJ's reasoning must always be "sufficiently discernible as to allow a reviewing court to ensure that the ALJ employed the proper standards and rendered a decision supported by substantial evidence." *Moss v. Comm'r of Soc. Sec.*, No. 18-CV-365, 2020 WL 896561, at *3 (W.D.N.Y. Feb. 25, 2020).

The ALJ did not trespass these boundaries. To start, the concentration limitation, while specific, is not a substantive restriction at all: two-hour work periods followed by a break is "considered normal" for unskilled work generally. *Daniel F. v. Comm'r of Soc. Sec.*, No. 22-CV-292, 2023 WL 6304722, at *9 (W.D.N.Y. Sept. 28, 2023) (collecting cases). The ALJ's inclusion of this "limitation" had no effect on Plaintif's employability for unskilled work. The same goes for the sit/stand/walk "restrictions"—those simply encompass the definition of light work. *See Mancuso v. Astrue*, 361 F. App'x 176, 178 (2d Cir. 2010) (summary order).

The ALJ's conclusion that Plaintiff would be off-task for a maximum of 10% of the workday finds sufficient support in the record. Plaintiff's rehabilitation counselor, Charlin Guerrero, opined that Plaintiff would be off task approximately 25% of the workday due to his

6

mental impairments. Tr. 2042. By contrast, a consultative examiner found no more than moderate limitations in the areas of sustaining an ordinary routine, sustaining concentration, regulating emotions, controlling behavior, and maintaining well-being. Tr. 530. Those findings aligned with the opinion of the state-agency consultant, Tr. 126 (moderate limitation in completing a normal workday without interruptions), and a treating physician, Tr. 539 (moderate limitations in abilities to function in a work setting at a consistent pace). The ALJ found the latter views "generally persuasive," though she believed a more "specific limitation[]" addressing Plaintiff's off-task issues was warranted. Tr. 627. She concluded that Plaintiff would be off task "a maximum of 10% of the workday." Tr. 622.

Plaintiff does not argue that the ALJ erred by relying on these less restrictive opinions; nor does he claim they are insufficient to support the ALJ's conclusion Plaintiff could perform unskilled work, notwithstanding his moderate limitations.[3] *Cf. McIntyre v. Colvin*, 758 F.3d 146, 152 (2d Cir. 2014) (moderate limitations in maintaining persistence were consistent with the ability to engage in simple, routine, low stress tasks). His concern is directed at the precise percentage that the ALJ identified. While no medical source specified that exact percentage, "[t]here is nothing inherently problematic about [an] ALJ's decision to assign a specific range to convey that Plaintiff would have a marginally greater need for [accommodations] as compared to an average employee." *Robert M. v. Comm'r of Soc. Sec.*, No. 23-CV-1247, 2025 WL 934538, at *5 (W.D.N.Y. Mar. 27, 2025). As the Court understands the decision, this was, in substance, the

---

[3] Plaintiff does argue that the ALJ mishandled her analysis of Guerrero's more restrictive opinion. *See* ECF No. 10-1 at 23-27. In substance, though, Plaintiff's argument is that there was sufficient record evidence to support Guerrero's findings. But "[u]nder the substantial evidence standard of review, it is not enough for [P]laintiff to merely disagree with the ALJ's weighing of the evidence or to argue that evidence in the record could support [her] position." *Gonzalez-Cruz v. Comm'r of Social Sec.*, 294 F. Supp. 3d 164, 187 (W.D.N.Y. 2018). A claimant cannot obtain remand merely by citing "evidence that arguably supports more restrictive limitation"; he must "articulate how the ALJ's [contrary] finding . . . was erroneous." *Piotrowski v. Comm'r of Soc. Sec.*, No. 18-CV-6075, 2019 WL 2266797, at *6 (W.D.N.Y. May 28, 2019) (emphasis added). Plaintiff's arguments do not meet this standard.

ALJ's rationale for the 10% limitation: Plaintiff's off-task issues did not preclude competitive employment and would pose only a minor impediment to work. *See* Tr. 623, 658. Because sufficient opinion evidence supports that conclusion, remand is not warranted. *Accord Johnson*, 669 F. App'x at 47 (ALJ's finding that claimant would perform work "no more than 10% slower than average" was not erroneous on the ground that it was framed in terms of a "particular percentage range," since finding was supported by substantial evidence); *James G. v. Comm'r of Soc. Sec.*, No. 20-CV-1885, 2022 WL 2180158, at *7 (W.D.N.Y. June 16, 2022) (collecting cases and stating that "[c]ourts in this Circuit have allowed ALJs to assess percentage off-task limitations even untethered from opinion evidence, as long as substantial evidence supported the finding").

The Court reaches the same conclusion with respect to the ALJ's finding that Plaintiff would miss work "in the range of 10 days per year but not consecutive days or in consecutive months." Tr. 622. Guerrero opined that Plaintiff would be absent more than four days per month, Tr. 2043, whereas the consultative examiner and the state-agency consultant opined that Plaintiff would be no more than moderately limited in his ability to sustain regular attendance at work. Tr. 126, 530. Again, Plaintiff does not challenge the ALJ's reliance on the consultative examiner and the state-agency consultant to find that Plaintiff's attendance limitations would not wholly preclude work. *See Koza v. Comm'r of Soc. Sec.*, 692 F. Supp. 3d 197, 204 (S.D.N.Y. 2023) (collecting cases and noting that a moderate limitations in attendance "did not require the ALJ to find that the claimant would be unable to work at any possible job on a consistent basis"). Given that opinion evidence, the ALJ's decision to translate the medical sources' findings into a more precise attendance limitation is not erroneous. *Accord Johnson*, 669 F. App'x at 47.

### b. Vocational Expert Testimony

As part of that RFC, the ALJ included a limitation that Plaintiff could only "occasionally reach overhead with his right upper extremity." Tr. 622. The vocational expert testified that, in light of the RFC that the ALJ crafted, Plaintiff could perform the jobs of collator operator, marker, and bench assembler. *See* Tr. 657-58. The vocational expert testified that she generally relied on the information contained in the *Dictionary of Occupational Titles* ("DOT") to make that determination, and that her testimony was consistent with that publication. Tr. 658-59. However, because the DOT does not identify the overhead-reaching requirements of occupations, the vocational expert relied on her own professional education and experience to conclude that Plaintiff could work notwithstanding his overhead-reaching limitations. *See* Tr. 659. Specifically, she testified that overhead reaching was not a requirement of those three jobs. *Id.*

Plaintiff notes that the DOT entries for the identified jobs indicate that they require frequent "reaching," which arguably includes overhead reaching. ECF No. 10-1 at 21. From this premise, Plaintiff argues that there was an apparent conflict between the vocational expert's testimony and the DOT, and that the ALJ failed to sufficiently resolve that conflict at the hearing. *Id.* at 21-22.

The premise of Plaintiff's argument is incorrect, however: there was no apparent conflict between the DOT and the vocational expert's testimony. Pursuant to agency policy, ALJs primarily rely on the DOT "for information about the requirements of work in the national economy." S.S.R. 00-4p, 2000 WL 1898704, at *2 (Dec. 4, 2000). Because the DOT is "not comprehensive," *McIntyre*, 758 F.3d at 152, the agency relies on vocational experts to "resolve complex vocational issues" and to provide "more specific information about jobs or occupations than the DOT." S.S.R. 00-4p, 2000 WL 1898704, at *2-3. Where a vocational expert's testimony

9

conflicts with the DOT, the ALJ is required to inquire into and resolve that conflict. *See id.*; *Lockwood v. Comm'r of Soc. Sec. Admin.*, 914 F.3d 87, 92-93 (2d Cir. 2019).

But this duty does not arise where, as here, the DOT "is silent on an issue." *John B. v. Comm'r of Soc. Sec.*, No. 19-CV-1113, 2021 WL 681283, at *4 (W.D.N.Y. Feb. 22, 2021); *see also Gibbons v. Comm'r of Soc. Sec.*, No. 22-2730, 2023 WL 3830774, at *4 (2d Cir. June 6, 2023) (summary order) (no conflict between DOT and vocational-expert testimony as to sit/stand option, cane use, and tinted glasses, because the DOT "does not include these limitations"). While the DOT addresses reaching generally, it does not address overhead reaching requirements specifically, let alone overhead reaching requirements as to each extremity. *See, e.g.*, Collator Operator, *Dictionary of Occupational Titles*, DICOT 208.685-010, 1991 WL 671753 (1991); *see also Tameka G. v. Comm'r of Soc. Sec.*, No. 22-CV-6056, 2024 WL 2817600, at *5-6 (W.D.N.Y. June 3, 2024). Consequently, there was no conflict between the vocational testimony and the DOT which would have demanded further inquiry by the ALJ. *Accord Mark M.L. V. Kijakazi*, No. 22-CV-126, 2025 WL 1899363, at *5 (W.D.N.Y. July 9, 2025) (collecting cases). Plaintiff's argument is rejected.

## CONCLUSION

For all of the reasons stated, Plaintiff's Motion for Judgment on the Pleadings (ECF No. 10) is DENIED, and the Commissioner's Motion for Judgment on the Pleadings (ECF No. 12) is GRANTED. The complaint is DISMISSED WITH PREJUDICE, and the Clerk of Court is directed to enter judgment and close this case.

IT IS SO ORDERED.

Dated: October 22, 2025
      Rochester, New York

_____
HON. FRANK P. GERACI, JR.
United States District Judge
Western District of New York